*December, 1823.*

Gaines
v.
Acre.

---

## William Crawford *against* The State.

*December, 1823.*

THIS was a writ of Error to the Circuit Court of *Washington*, on a judgment on motion at *April* term, 1822, in favour of the State against *William Crawford*, President of the *Tombeckbee* Bank, for "one thousand dollars, being the "amount of the penalty incurred for failing to pay into the "treasury the taxes accruing from said Bank for the year "1820." The transcript of the Record sets out that *William Crawford*, Esq. President of the *Tombeckbee* Bank, on the 7th day of *May*, 1820, acknowledged the "legal service of a notice in *form* following," to wit :

The Act of 1820, to raise a revenue for 1821, does not authorize judgment on motion vs. the president of the *Tombeckbee* Bank, for failing to pay the taxes of 1820.

"Comptroller's office, *Cahawba.*
"To *William Crawford*, Esq. President of the *Tombeckbee* Bank.

"You are hereby notified, that on the first Monday after "the fourth Monday in April next, I shall, by the solicitor "of the first Judicial Circuit, move for judgment against you

DECEMBER, 1823.
Wm. Crawford
v.
The State.

" in the Circuit Court of *Washington* County, for the sum
" of one thousand dollars, which you have incurred, by fail-
" ing to pay into the treasury the taxes accruing to the
" State aforesaid from said Bank for the year 1820, *January*
" 28th, 1822.

"SAMUEL PICKENS, Comptroller."

The defendant to the motion here assigned as Errors—
1st, It does not appear that the defendant had notice of the
motion as required by law. 2d, The Circuit Court erred
in rendering judgment against the defendant individually for
the fault of the President, Directors and Company of the
*Tombeckbee* Bank. 3d, The law imposing a tax on the Bank
is in violation of its charter, which is a contract, and the law
is unconstitutional. 4th, The Record does not shew that a
certificate from the comptroller was produced shewing
that the tax had not been paid.

*Crawford* for plaintiff in Error.—By the Statute, and
from the first principles of jurisprudence, the defendant was
entitled to notice, in order that he might be heard before
being sentenced to pay a penalty. In the Record it is stat-
ed, that on the *7th day of May*, 1820, he acknowledged ser-
vice of a notice in the following form, and then follows the
form. If this be taken as the notice, it appears not to have
issued from the Comptroller's office before the 28th day of
*January*, 1822, nearly two years after the time of the acknow-
ledgment of its legal service as stated in the Record. But
leaving out of view the time when the service of notice was
acknowledged, the notice, or form of notice, as set out in the
Record, charges the defendant with no default or offence
for which he was by *law* liable to a penalty of one thousand
dollars, or to any penalty. The notice charges that the de-
fendant, the President of the Bank, failed to pay the taxes,
and thereby incurred the penalty. The tax is laid on each
share of Bank stock, not on the President. It is to be paid
out of the joint funds, not out of his private funds : the Di-
rectory control the joint funds. He cannot dispose of a
dollar of them without their order. How then can he be
charged with a penalty for failing to perform what he had
no power, what was impossible for him to perform ? (Acts
of 1820, p. 10.)

All the pre-requisites required by the Statute for the ex-
ercise of jurisdiction in this summary mode should appear in
the Record. (*Logwood* and alii against *Huntsville* Bank,
decided by this Court at *November*, 1820.) The Act of
1820 requires notice of the motion to be given to the de-

faulting Bank, to the Corporation, not to the President. Does the Record shew such notice, or any notice ? The Clerk certifies that on the 7th day of *May*, 1820, (more than seven months before the enactment of the Act referred to,) the President acknowledged " legal service of a notice in form following," and he sets out a notice to the President, dated the 28th day of *January*, 1822, nearly two years after this acknowledgment of service. The defendant in the Court below did not appear. Judgment was rendered against him when he was not a party in the Court.

In a proceeding of this nature, jurisdiction must be expressly given by Statute to the tribunal by which, and according to the mode in which, it is exercised. (*Logwood* and *alii* against *Huntsville Bank*, case of the Collector of Charleston, Wheaton's Rep. *McIntyre* against *Wood*. Ib.) What Statute vested the Circuit of *Washington* County with this jurisdiction ? None can be found. The Revenue Act, passed *December* 20th, 1820, directs that motion shall be made in the Circuit Court, for the penalty of *two thousand dollars*, imposed for failing to pay the taxes therein named. This Act is to raise a revenue for the year 1821. It lays the taxes for that year, not for the past year. It directs, that on making out the last dividend for each preceding year, the amount of taxes due from the Bank shall be returned ; and that it shall be paid, and the Treasurer's receipt produced, on or before the first day of *January* in every year. This Act received the Governor's signature on the 20th day of *December*, 1820. It could not have been promulgated until after the first day of *January*, 1821. It cannot have been the intention of the Legislature, that the Directors of the Bank at *St. Stephens* should, within eleven days after the Act had been approved at *Cahawba*, and before it had been published, make out their last dividend for the year with a view to this tax, make return of its amount, pay it into the treasury, and produce the Treasurer's receipt ; and that for their failure to perform this, the President of the Bank should individually be adjudged to pay a heavy penalty.

By the Act to raise a revenue for the year 1820, (Acts 1819, page 90.) a tax is laid on the Bank. But the penalty for failing to pay is directed to be recovered on motion in the *Supreme Court*, not in the Circuit Courts. There is no Statute giving jurisdiction of a motion for the recovery of the penalty imposed by the Act of 1819 to any other than the Supreme Court.

But can the Legislature rightfully tax this Bank Stock? The *Tombeckbee* Bank is a private Corporation. Its charter,

19

**DECEMBER, 1823.**

Wm. Crawford
v.
The State.

granted by the Legislature in 1818, is a contract between the Government and the Stockholders. The grantor, without the consent of the grantees, cannot revoke or restrain the privileges granted. The Legislature cannot impair the obligation of the contract. (Bill of Rights, section 19. *Logwood*, &c. against *Huntsville* Bank, 4 Wheaton, 316, &c. *McCulloch* against *State of Maryland*.) The charter does not require that for the exercise of its privileges the Bank shall annually pay a certain amount of taxes into the treasury. If new conditions and burthens can now be imposed, the grantees hold the charter only at the mercy of the grantor : for the Bank stock may be so heavily taxed as to prevent the exercise of the privileges granted by the charter.

By the Act of 1820, the certificate of the Comptroller is declared to be the evidence of the failure to pay the tax. The Circuit Court must know this fact, before it could rightfully adjudge that by reason of it, the plaintiff in Error should pay a penalty of one thousand dollars. It could judicially be shewn only from the Comptroller's certificate. The Record does not shew that this was produced. Is it now to be presumed to be intended that it was? This Court, in the case of *Logwood*, &c. against the *Huntsville Bank*, decided, that a party claiming the benefit of a summary proceeding under a Statute, must come strictly within its terms, and shall take nothing by intendment.

*Hitchcock* for the State.—The case, as it has been argued for the plaintiff in Error, involves the enquiry into the right to tax the stock of the Bank.

That the right to lay taxes is inherent in the government seems to be self-evident. The functions, the very existence of the Government, depend on its revenue. The Government may legitimately exercise the right of taxation as to all objects to which it is applicable, and to which it has not expressly abandoned the right. It has not expressly abandoned it as to the stock of the *Tombeckbee* Bank, either by the charter or by any other Legislative Act. (4 Wheaton, 428.) In ambiguous cases under the Revenue Acts, good policy and the public interest require a construction in favour of the taxes. (Jacob's L. Dict.—Taxes.) All property and all persons within the limits of the State are protected by the Government, and liable to contribute by taxes to its support. Corporations are included under the general description of persons, and, like natural persons, are so liable. (1 Burr. 156. 15 John. 382. 7 Mass. 239. 10 Mass. 516.) The rights of natural persons to the benefit of their labour and ingenuity, to acquire and enjoy property, are,

from the nature of the social compact, not less sacred and inviolable than the rights conferred on the Stockholders of the *Tombeckbee* Bank by the charter. Yet property may be taxed, and taxed to an extent which might render it unprofitable to the owner ; and so may the Bank stock be taxed. The security against the abuse of the power in either case, is in the structure of the Government. The Legislature acts upon its constituents. Its members are elected for short terms of service : their enactments can be repealed or modified by their successors.

The Legislature could not rightfully dissolve the Corporation. They could not by law prohibit the Bank from discounting Bills and Notes, issuing its Bank Notes, or doing of any other act expressly authorized by the charter. But until a clause in the charter is shewn by which the Government agrees not'to tax the Bank stock, it must be evident that it is as subject to taxation as any other property in the State.

How is the right to lay and collect a tax to be enforced ? Corporations, as well as natural persons, may be subjected to a double tax, or to other penalties, for failing to give lists of their taxable property, or to pay the taxes due thereon. This is a necessary consequence of the right of laying the tax, and of the duty on the party taxed, to pay it (2 Ray's Rep. 249. 10 Mass. 516.) But a Bank, like other Corporations, is an artificial incorporeal being. Its property is not always visible. The penalty, to be effectual, must be enforced on its officers who control its operations, whose duty it was to return and pay the amount of the taxes, the default is theirs, and they are rightfully subjected to the penalty.

Has it ever been questioned but that an agent, or tenant in possession, of the property of another, and failing to give a statement of it to the assessing officer as required by law, may rightfully be subjected to the penalty for such omission ?

By the tax laws of the State of *New-York*, the officers of such Corporations are required to pay the taxes, and their private property is liable if they fail to do so. Indeed, it seems strictly to accord with natural justice to inflict the penalty on the defaulting officers. They, and not the ideal being for whom they act, have the means of knowing and of doing what the Statute has required.

As to the form of the proceedings in this case—It cannot be pretended that the Supreme Court, vested with appellate jurisdiction only, could take jurisdiction of this, an original motion. But the Circuit Court is vested with general

DECEMBER, 1823.

Wm. Crawford
v.
The State.

original jurisdiction; and if, as I think I have shewn, the officers of the Bank were legally subjected to the penalty, a technical defect in the Act of 1819 shall not deprive the State of its revenue. If jurisdiction for recovery of the penalty had not been given by the Act to any particular Court, it would have appertained to the Circuit Courts as Courts of general jurisdiction : and so it does, although the Legislature, by an unconstitutional and nugatory clause in the Statute, have said that the jurisdiction shall belong to the Supreme Court.

As to the time when the Act passed—The dividend might have been declared and the taxes paid between the 20th day of *December*, 1820, and the first day of *January*, 1821. But the Comptroller, until 1822, did not institute the proceeding for the recovery of the penalty. If the President and Directors intended to pay the tax as required, it was surely in their power, when making out their last dividend in 1821, to have returned a statement of the amount of taxes for 1820, and to have paid the amount into the treasury before the first day of *January*, 1822.

As to the Notice—If the Record states that which is true, the defendant in the Circuit Court, by his acknowledgment of legal service of Notice, admitted every thing which the Notice was intended to effect. If he thought proper to waive the production of the Notice, and to declare that he was ready to hear and defend the complaint against him, or to waive any attempt at defence, will the appellate Court now say that these matters, deliberately admitted by the defendant in the Court below to be sufficient, must yet appear on the Record ; and that he may now retract his admissions and call on this Court to determine whether they are sufficient or not ?

As to the Comptroller's certificate, it *is* enough to say, that the Statute makes it evidence of the default of the Bank ; and it is not necessary that this or any other evidence given on the trial should be spread upon the Record.

*Crawford* in reply :—The right to tax the stock is here rather an abstract question, than one on which the decision of the case must turn. If necessary, it can be satisfactorily shewn, that each of the Acts as to the tax on the Bank stock is *felo de se*. Is the law as to the penalty on the President constitutional ? Have its provisions been pursued ? These questions, and a comparison of the Record with the Statutes, will at once, I conceive, determine the case.

The case put by Mr. *Hitchcock* of the liability of the agent, sustains rather than weakens my position. The agent

has the possession and control of the property taxed, and from it or its profits can pay the tax. The President or any other single officer of the Bank cannot "make out" the dividend, or apply the money of the Corporation to the payment of the tax. Probably the right construction of these Statutes is, that *all* the officers of the Bank, of whom these duties are required, and not *one* of them separately, shall be liable for the penalty. But here the penalty has been adjudged against one for not doing that which he never had the power to do.

As to the liability of the officers of such Corporations by the Statute of *New-York*, I ask, is that Statute in force here?

Mr. *Hitchcock* contends, that as this Court, in which by the Act of 1819, the motion is required to be made, is by the Constitution prohibited from original jurisdiction of it; the motion is therefore to be made in the Circuit Court, that being a Court of general original jurisdiction.

But the proceeding was summary, not according to the course of the common law. The authority for the exercise of such jurisdiction is derived solely from the Statute. How then can any other Court than that to which alone the Statute has given the jurisdiction, take upon itself to exercise it? Is there any Statute which authorizes the Circuit Court on motion to render judgment for the penalty of *one thousand dollars*, imposed for failing to pay the tax for the year 1820? This Court must depart from the principles which have uniformly governed its decisions, and the decisions of every other Court acting under a like system of jurisprudence, before it can determine that a Statute, giving jurisdiction of such motion to one tribunal only, by necessary intendment gives it to another; or that a party claiming the benefit of such statutory remedy, shall have it, without regard to the express terms and restrictions under which it has been authorized.

Judge *Minor* delivered the opinion of the Court:

On the motion of the solicitor of the first circuit, the Circuit Court of *Washington* County adjudged, that the State recover against *William Crawford*, President of the *Tombeckbee* Bank, the sum of one thousand dollars, the amount of the penalty incurred for failing to pay into the Treasury the taxes accruing from said Bank for the year 1820. On this judgment he prosecutes this writ of Error.

By the Act of 1819, to raise a revenue for the year 1820, this penalty is directed to be recovered on motion in the Supreme Court. The Act of 1820 to raise a revenue for the

year 1821, directs that motions for the penalties that may accrue under it against the President and Directors of the Bank, shall be made in the Circuit Courts; this latter Act is altogether prospective in its terms. It will not admit of a construction which will include the case of a penalty for failing to pay the taxes for the year 1820. The penalty imposed by it for the default is *two thousand dollars*: the penalty imposed by the Act of 1819 is *one thousand*. It is contended, that as this Court is restrained by the constitution from taking original jurisdiction of the motion, which by the Act of 1819 is directed to be made here, that it belongs by necessary intendment to the Circuit Courts, as Courts of original jurisdiction. (See *State* against *Flinn*, ante, page 8.) We cannot perceive how it can be doubted that the rules of construction, as to penal Statutes, and as to summary proceedings, apply to this part of the Act of 1819. The judgment in its terms is for a penalty, and it is certainly such in its nature. The judgment was rendered on motion. The principles recognized by this Court in the cases of *Logwood* against the Bank of *Huntsville*, *Yancey* against *Hankins* and *Childress* against *McGehee*, apply with at least equal force here. The Circuit Court was not authorized by Statute, nor by the principles of the common law, to render judgment on motion against the plaintiff in Error for the penalty which has been adjudged. It is the opinion of a majority of this Court, that the judgment must be reversed.